**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALEXANDER J. WASHINGTON-RILEY,**<br><br>       **Plaintiff,**<br><br>    v.<br><br>**CITY OF CHICAGO, OFFICER KEVIN DRUMGOOLE, OFFICER DURAND LEE, and SERGEANT DWAYNE JOHNSON,**<br><br>       **Defendants.** | Case No. 1:19-CV-06160<br><br>Judge Martha M. Pacold<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff, Alexander J. Washington-Riley ("Washington-Riley"), by and through his attorneys, Latham & Watkins, for his First Amended Complaint ("Complaint") against Defendants Officer Kevin Drumgoole, Officer Durand Lee, and Sergeant Dwayne Johnson (collectively, "Officer Defendants"), and the City of Chicago (the "City of Chicago"), hereby alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action seeking damages pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 for violations of Washington-Riley's rights protected by the Fourteenth Amendment of the United States Constitution, and for substantial and related claims pursuant to the state and common laws of the State of Illinois.

2. The violations, as further described below, relate to Washington-Riley's wrongful prosecution, conviction, and sentencing for a crime he did not commit and for which his conviction was eventually vacated.

3. On November 19, 2014, Washington-Riley was convicted of selling heroin, a Class I felony, to City of Chicago police officers engaged in an undercover-controlled buy operation (the "controlled buy") on May 6, 2011.

4. On January 22, 2019, after living with a felony conviction on his record for over five years and completing his probation, Washington-Riley successfully petitioned the Conviction Integrity Unit of the Cook County State's Attorney's Office to vacate his sentence because he did not commit the charged crime. On the State's own motion, Washington-Riley's conviction was vacated.

5. Washington-Riley now sues the Defendants to remedy the injuries and harm he suffered for a wrongful prosecution and conviction in violation of his constitutional and other legal rights based upon suppressed exculpatory and impeachment evidence and fabricated evidence.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1342(a) because this is a civil action arising under federal law, 42 U.S.C. § 1983, and the rights guaranteed by the United States Constitution.

7. This Court has supplemental jurisdiction over Washington-Riley's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise out of the same case or controversy as his federal claims.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because Defendants are physically situated in this judicial district and because the events giving rise to this action all occurred in this judicial district.

## PARTIES

9. Washington-Riley is an individual who was born in 1990 and is a resident of the City of Chicago in Cook County, Illinois.

10. Officer Defendant Kevin Drumgoole ("Drumgoole") is an individual who at all times relevant to this Complaint was a police officer with the City of Chicago (Star No. 19047).

11. Officer Defendant Durand Lee ("Lee") is an individual who was at all times relevant to this Complaint a police officer with the City of Chicago (Star No. 18858).

12. Defendant Sergeant Dwayne Johnson ("Sergeant Johnson") is an individual who was at all times relevant to this Complaint a police officer with the City of Chicago (Star No. unknown).

13. Defendant City of Chicago is an Illinois municipal corporation. The City of Chicago is responsible for the acts of the Officer Defendants while employed by the City of Chicago and while acting within the scope of their employment.

14. In engaging in the misconduct alleged herein, each of the Officer Defendants acted under the color of authority and/or color of law and in the course and scope of his employment by the City of Chicago.

## FACTUAL BACKGROUND

### May 2011 Controlled Buy of Heroin

15. On May 6, 2011, at approximately 10:30 a.m., Drumgoole, serving as an undercover police officer in a Chicago Police Department narcotics investigation, claims to have made contact with an individual who offered to sell him heroin. Drumgoole claims to have purchased 1.8 grams of heroin from that individual in a gangway at 5409 South Laflin Street, Chicago, Illinois before departing without obtaining the dealer's name and address, inspecting the dealer's driver's license or any other form of identification, or making an arrest.

### Identification of the Dealer as Alexander Clevon Riley

16. After leaving the scene of the controlled buy, Drumgoole communicated a description of the dealer to Lee and his partner. Drumgoole told Lee that the dealer was a black

male wearing a black baseball cap, brown jacket, and dark blue jeans. At around 10:53 a.m. on the same date, Lee approached the person described by Drumgoole as the dealer near 5425 South Laflin Street, Chicago, Illinois 60609. Upon Lee's request for proof of the suspected dealer's identification, the suspect provided his Mississippi driver's license. The license was issued in the name of "Alexander Clevon Riley" with his date of birth in 1985. The license also contained a photograph of Alexander Clevon Riley that matched the appearance of the person approached by Lee and his partner.

17. The Mississippi driver's license was valid. Lee had no reason to doubt, and did not doubt, its validity or authenticity.

18. Alexander Clevon Riley also provided Lee with his residential address within the City of Chicago, an address that was not recorded on his Mississippi driver's license.

19. According to Lee, his conversation with the person he believed to be the dealer whom he identified as Alexander Clevon Riley lasted "approximately five to eight minutes."

20. Having made contact with a person named and identified as Alexander Clevon Riley, Lee completed a "contact card" as the official record of such contact with the information obtained from the Mississippi driver's license. The contact card recorded the person's full name as "Alexander Clevon Riley," his weight as 225 pounds, his driver's license number, and his date of birth in 1985.

21. As of May 6, 2011, Alexander Clevon Riley was 26 years old.

**Alexander Clevon Riley's Earlier Interaction with Chicago Police**

22. On April 29, 2011, just days before the controlled buy, Alexander Clevon Riley was stopped while driving a car at 5300 South Ashland Avenue, Chicago, Illinois and arrested by Chicago Police for driving under the influence. During this stop, Alexander Clevon Riley provided

4

a Mississippi driver's license with his photograph, his name as "Alexander Clevon Riley," and his date of birth in 1985. Pursuant to Chicago Police Department protocol, his mug shot was taken and registered, along with other identifying information, into the Central Booking database and I-CLEAR, a statewide law enforcement information-sharing database.

23. The location of Alexander Clevon Riley's traffic stop, 5300 South Ashland Avenue, Chicago, Illinois, is approximately *three-tenths of a mile* from 5409 South Laflin Street, Chicago, Illinois, the location of the May 2011 controlled buy.

### Sergeant Johnson and Drumgoole's Bogus Photo Array

24. Following Lee's May 2011 conversation with the person he believed to be the dealer, identified as Alexander Clevon Riley, Lee relayed information about the contact and Alexander Clevon Riley's identity to Sergeant Johnson.

25. Sergeant Johnson was not physically present with either Drumgoole when he made the controlled buy or with Lee when he made contact with the person described by Drumgoole and identified as Alexander Clevon Riley.

26. Within an hour of Lee's interaction with Alexander Clevon Riley, Sergeant Johnson prepared a photo array of potential suspects that he would present later that afternoon to Drumgoole to make a positive identification of the dealer who sold heroin to Drumgoole earlier that day.

27. In preparing the photo array, Sergeant Johnson ran the name "Alexander Riley" through I-CLEAR and discovered Plaintiff Alexander Washington-Riley's Central Booking ("CB") number. Washington-Riley's CB number was assigned to him a year prior when Washington-Riley was arrested for disorderly conduct. Using Washington-Riley's CB number

5

and photograph from that disorderly conduct arrest, Sergeant Johnson selected his photograph for the photo array.

28. Sergeant Johnson did not search I-CLEAR for the name "Alexander Clevon Riley" or the date of birth and other information obtained from the Mississippi driver's license and recorded by Lee on the contact card. Nor did Sergeant Johnson make any inquires with the authorities in Mississippi regarding that person's background and identity.

29. At all times relevant to this Complaint, including during Sergeant Johnson's search of I-CLEAR, Alexander Clevon Riley's name, along with other personal information, was present in the system and in the possession of the Chicago Police Department.

30. Although Lee believed he had approached the dealer based on the physical description supplied by Drumgoole, and that person was identified by Lee as "Alexander Clevon Riley" based on inspection of a valid driver's license, Sergeant Johnson omitted Alexander Clevon Riley's photograph from the photo array.

31. On May 6, 2011 at 12:20 p.m., at the police station, Sergeant Johnson presented the photo array to Drumgoole. The photo array of five individuals included the photograph of Washington-Riley but excluded the photograph of Alexander Clevon Riley. Drumgoole identified Washington-Riley as the dealer, despite the fact that Washington-Riley looks nothing like Alexander Clevon Riley and his personal information did not match Alexander Clevon Riley's information as recorded on the Mississippi driver's license and Lee's contact card.

32. During a hearing on Washington-Riley's post-trial motion to set aside his conviction, the trial judge remarked that the appearances of Alexander Clevon Riley and Washington-Riley were "not even—facially they're not close. The hair is not close, . . . just even the face is not the same."

6

33. Despite the fact that Washington-Riley looks nothing like Alexander Clevon Riley and the fact Washington-Riley had never been at or near 5409 South Laflin Street, Chicago, Illinois, Drumgoole selected Washington-Riley from the incomplete photo-array.

34. Drumgoole also selected Washington-Riley from the incomplete photo-array even though Washington-Riley had never been known as Alexander Clevon Riley and did not have a Mississippi driver's license.

35. Drumgoole's selection of Washington-Riley from the photo array was, upon information and belief, tipped by Sergeant Johnson as a "match" with the information supplied by Lee since no other "Rileys" or "Alexander Rileys" were included in the photo array.

36. Based upon Drumgoole's misidentification of Washington-Riley in the photo array, Sergeant Johnson approved an investigative alert to be issued for Washington-Riley. The investigative alert would inform law enforcement of an active investigation involving Washington-Riley, and, if contact were made with him, he should be detained for probable cause.

### Washington-Riley's Arrest in 2013

37. On August 24, 2013, *two years* after the controlled buy of heroin, Washington-Riley was in an automobile accident when a theater van collided into his car. When police responded to the scene of the accident, they ran Washington-Riley's name in the law enforcement systems and the investigative alert for the 2011 heroin buy was discovered. As a result, Washington-Riley was arrested and booked for a crime he did not commit.

38. On August 25, 2013, after spending the night in jail, Washington-Riley was released on $30,000 bond. He was forced to wear an electronic monitor as a condition of his bail.

39. On September 16, 2013, Washington-Riley was formally charged with one count of delivery of a controlled substance containing heroin.

7

**Pre-Trial, Trial, and Conviction Proceedings against Washington-Riley**

40. On October 8, 2013, Washington-Riley, through his attorney, requested all exculpatory evidence in the possession of the State, including law enforcement.

41. That same day, the State denied the existence of any known, material, exculpatory evidence "within possession or control of [the] State which tends to negate the guilt of" Washington-Riley.

42. When denying that the State possessed any known, material, exculpatory evidence relating to Washington-Riley's criminal charges, Chicago Police possessed at least *two* arrest reports of Alexander Clevon Riley containing information that matched the identifying information on Lee's contact card. In addition to being arrested on April 29, 2011, six days before and just three-tenths of a mile from the controlled buy with Drumgoole on May 6, 2011, Alexander Clevon Riley was arrested by Chicago Police the following month in June 2011.

43. At no time before Washington-Riley's conviction did Officer Defendants produce law enforcement records concerning Alexander Clevon Riley, even though he was thought by Lee to be the dealer based on the physical description provided by Drumgoole; Lee approached and identified such person as Alexander Clevon Riley based on a valid Mississippi driver's license; and Alexander Clevon Riley was known to have been in the vicinity of the controlled buy six days before the controlled buy and in the City of Chicago during the following month.

44. Officer Defendants acted knowingly or with deliberate, reckless indifference when they omitted a known, alternate suspect, Alexander Clevon Riley, from the photo array and later suppressed the following evidence concerning Alexander Clevon Riley in order to make their case against Washington-Riley:

    a. Alexander Clevon Riley is not an alias but the lawful name of an actual person;

8

b. Alexander Clevon Riley's date of birth was in fact the date of birth recorded on the Mississippi driver's license shown to Lee;

c. Alexander Clevon Riley's weight was in fact the weight recorded on the Mississippi driver's license shown to Lee;

d. Alexander Clevon Riley's facial appearance matched the photograph on the Mississippi driver's license shown to Lee;

e. Alexander Clevon Riley provided Lee with his Chicago address;

f. Alexander Clevon Riley was arrested by Chicago Police on April 29, 2011, six days before the controlled buy with Drumgoole;

g. Alexander Clevon Riley was arrested by the Chicago Police on April 29, 2011 in the very vicinity where the controlled buy with Drumgoole occurred;

h. Alexander Clevon Riley was arrested by the Chicago Police in June 2011, the month following the controlled buy with Drumgoole;

i. Alexander Clevon Riley's personal identification information existed in law enforcement databases used by and/or available to the Chicago Police Department;

j. Alexander Clevon Riley's personal identification information matched personal identification for him as recorded in law enforcement databases used by and/or available to the Chicago Police Department;

k. Alexander Clevon Riley's identity had been confirmed by the Chicago Police Department; and,

l. Alexander Clevon Riley is not an alias for Washington-Riley.

45. Rather than producing material, exculpatory evidence implicating another suspect, Sergeant Johnson, Drumgoole, and Lee disregarded the very existence of Alexander Clevon Riley by excluding him from the photo array and, at trial, pinning his Mississippi driver's license on Washington-Riley.

46. Sergeant Johnson testified at Washington-Riley's trial he disregarded an obvious discrepancy between Washington-Riley's birthdate (born in 1990) and the birthdate on the Mississippi driver's license (born in 1985) because "I'm not sure if the date of birth is something that would be relevant when it comes to inputting a CB number." Further, he testified that "there [are] many alias dates of birth…"

47. Drumgoole testified at trial that he picked Washington-Riley out of the photo array as the person from whom he purchased heroin in the controlled buy and that he recognized him in the courtroom as the dealer.

48. Lee testified at trial that he recognized Washington-Riley as the person he approached based on Drumgoole's description and he obtained the Mississippi driver's license from him.

49. On November 19, 2014, in wholesale disregard of the evidence known to Officer Defendants about Alexander Clevon Riley, Washington-Riley was convicted in a bench trial of the charge against him. At trial, the State relied heavily upon Drumgoole's testimony that he picked out Washington-Riley's photograph from the photo array and recognized him as the dealer. The State concealed from Washington-Riley and the court that Chicago law enforcement had an exact match in its databases for Alexander Clevon Riley, the person identified by Lee based on inspection of his driver's license, and that Alexander Clevon Riley was in the vicinity of the alleged drug deal in the days preceding and the month after the controlled buy.

50. Washington-Riley's sentence included probation for a period of thirty months, payment of $1,500.00 in probation fees payable at $50.00 per month, payment of a fine of $459.00, alcohol and drug evaluation, periodic urine tests, and DNA indexing.

51. The State also failed to produce to Washington-Riley critical evidence that Drumgoole was suspended for seven days in 2014, prior to Washington-Riley's trial, for submitting false reports. That evidence should have been produced to impeach Drumgoole's credibility and false identification of Washington-Riley.

### Washington-Riley's Motion for New Trial and Sentencing

52. Even after the State was presented with Washington-Riley's defense that he did not sell heroin to Drumgoole, never possessed a Mississippi driver's license, and had never been to the location of the controlled buy, Officer Defendants persisted in suppressing evidence during post-conviction motion practice and proceedings.

53. On December 19, 2014, Washington-Riley filed a Motion for New Trial, asserting that his conviction was based on a biased and incomplete photo array because it did not include the photograph of the suspected dealer identified as Alexander Clevon Riley based on the Mississippi driver's license.

54. During a hearing before the trial court on December 19, 2014, the State prosecutor represented to the court that he had no knowledge of any prior arrest records of Alexander Clevon Riley in Illinois or in Mississippi, but that he would "run a rap on this guy."

55. On March 16, 2015, during oral arguments on the Motion for New Trial, which came far too late for Washington-Riley to make use of the evidence at trial, the State disclosed for the first time that Alexander Clevon Riley had been arrested by Chicago police just days before Drumgoole's controlled buy. At that time, the State informed the court of the address of that arrest

11

but failed to disclose that it occurred only three-tenths of a mile from the location of the controlled buy. Astonishingly, the Chicago Police Department possessed records of Alexander Clevon Riley's arrest, including his photograph, since April 29, 2011.

56. In considering the Motion for New Trial, the trial court did not question Officer Defendants under oath about why they suppressed critical evidence concerning Alexander Clevon Riley. Instead, the trial court accepted a representation by the prosecutor that he had spoken with Drumgoole and, in an out-of-court statement made on January 30, 2015, Drumgoole told the prosecutor that Washington-Riley was the dealer. The trial court denied Washington-Riley's Motion for New Trial.

### Vacatur of Washington-Riley's Conviction

57. On January 22, 2019, after Washington-Riley successfully petitioned the Conviction Integrity Unit of the Cook County State's Attorney's Office, the State moved to vacate Washington-Riley's conviction. The trial court granted the motion.

### Impact of the Conviction on Washington-Riley

58. Washington-Riley's felony conviction and sentencing sent his life into a tailspin. He was no longer able to work at the same level he had before his arrest and suffered from crippling depression.

59. Prior to his conviction, Washington-Riley was a successful videographer and producer of music and promotional videos. He had completed several years of college education and was self-sufficient. Washington-Riley had reason to be proud of his work and success and anticipated a long and stable business in the music industry.

60. As a direct result of his wrongful conviction, Washington-Riley suffered financial loss, as his felony conviction interfered with his ability to work. He also suffered financial losses

in the form of mandatory fees and costs assessed at his sentencing, as well as the fees and costs in the defense of an unjustified and utterly misdirected prosecution.

61. As a direct result of his wrongful conviction, Washington-Riley suffered emotional pain and suffering from the social isolation, shame, and frustration he experienced as a result of his felony record.

## CAUSES OF ACTION

### Count I: 42 U.S.C. § 1983 Against All Officer Defendants
### Unfair Trial: Concealment of Exculpatory Evidence [*Brady* Violations]

62. Washington-Riley hereby incorporates paragraphs 1–61 as alleged herein.

63. Officer Defendants violated Washington-Riley's constitutional right to a fair trial under the due process clause of the Fourteenth Amendment of the United States Constitution by suppressing exculpatory evidence pointing to Alexander Clevon Riley as the dealer.

64. Officer Defendants acted knowingly and/or with deliberate, reckless indifference when they failed to produce evidence in their possession that Alexander Clevon Riley, a person with a name similar to Washington-Riley's, had been arrested days earlier in very close proximity to the location of the controlled buy with Drumgoole. The Chicago Police Department's positive identification of Alexander Clevon Riley as a person with a Mississippi driver's license who was known to have been in close proximity to the location of the controlled buy in the days immediately before and after the controlled buy were material facts that implicated another person and exonerated Washington-Riley from the charges brought against him.

65. As a direct and proximate result of Officer Defendants' misconduct, Washington-Riley was wrongfully convicted and sentenced and sustained damages therefrom, including attorneys' fees and expenses incurred in the defense of the prosecution, lost business opportunities, severe emotional distress, and mental anguish.

13

**Count II: 42 U.S.C. § 1983 Against All Officer Defendants**
**Unfair Trial: Concealment of Impeachment Evidence [*Brady* Violations]**

66. Washington-Riley hereby incorporates paragraphs 1–61 as alleged herein.

67. Officer Defendants violated Washington-Riley's constitutional right to a fair trial under the due process clause of the Fourteenth Amendment of the United States Constitution by knowingly and/or with deliberate, reckless indifference suppressing evidence that would have impeached Drumgoole's credibility.

68. Unbeknownst to Washington-Riley, Drumgoole was suspended by the Chicago Police Department in 2014, *before Washington-Riley's trial*, for various violations, including falsification of records. Such evidence would have seriously undercut Drumgoole's credibility as the only witness to the alleged controlled buy.

69. As a direct and proximate result of Officer Defendants' misconduct, Washington-Riley was wrongfully convicted and sentenced and sustained damages therefrom, including, but not limited to, attorneys' fees and expenses incurred in the defense of the prosecution, lost business opportunities, severe emotional distress, and mental anguish.

**Count III: 42 U.S.C. § 1983 Against All Officer Defendants**
**Unfair Trial: Fabrication of Evidence**

70. Washington-Riley hereby incorporates paragraphs 1–61 as alleged herein.

71. Officer Defendants violated Washington-Riley's constitutional right to a fair trial under the due process clause of the Fourteenth Amendment of the United States Constitution by fabricating evidence that Washington-Riley was the dealer when they knew that Alexander Clevon Riley was the dealer based upon (a) the physical description provided by Drumgoole to Lee; (b) Lee's identification of that person as Alexander Clevon Riley based upon his valid Mississippi driver's license; and (c) Lee's relaying Alexander Clevon Riley's personal identification information to Sergeant Johnson for the purpose of preparing the photo array.

72. At trial, Sergeant Johnson and Drumgoole each testified that Drumgoole recognized Washington-Riley as the dealer in the photo array. Their testimony was false. The photo array omitted the only suspect confirmed by physical description, name, and birthdate, Alexander Clevon Riley. Instead, Sergeant Johnson included another "Alexander Riley" in the photo array and Drumgoole selected that "Alexander Riley," the Plaintiff, from the photo array. These facts demonstrate that Drumgoole was assisted or directed by Sergeant Johnson to select Washington-Riley from the photo array as the only "Alexander Riley" in the group. The photo array was not only incomplete because it omitted the sole suspect, it was suggestive and tainted by misconduct.

73. Rather than revealing their gross malfeasance and egregious misconduct leading to the wrongful prosecution and conviction of Washington-Riley, Officer Defendants suppressed evidence concerning Alexander Clevon Riley and provided knowingly false and misleading testimony at trial. Sergeant Johnson testified that he used the information Lee provided to identify Washington-Riley in the central booking system; that he did not identify Washington-Riley to Drumgoole when presenting the photo array; and that birthdates on valid driver's licenses are often fake and unreliable, maintaining that the Mississippi driver's license belonged to Washington-Riley and no one else. Officer Defendants knew, however, that standard investigative practices required Sergeant Johnson to search for and include in the photo array the photograph of Alexander Clevon Riley as the person identified by name, birthdate, and other personal information on the driver's license inspected by Lee. Furthermore, Drumgoole and Lee both lied when they testified they recognized Washington-Riley as the person in the courtroom with whom they had their encounter. Washington-Riley and Alexander Clevon Riley look nothing alike. And in the three

15

years that had passed since their encounter, which lasted only minutes, Drumgoole and Lee's unrefreshed memories of the dealer surely had vanished.

74. As a direct and proximate result of Officer Defendants' misconduct, Washington-Riley was wrongfully convicted and sentenced and sustained damages therefrom, including attorneys' fees and expenses incurred in the defense of the prosecution, lost business opportunities, severe emotional distress, and mental anguish.

**Count IV: State Law Claim Against All Officer Defendants and the City of Chicago
Malicious Prosecution**

75. Washington-Riley hereby incorporates paragraphs 1–74 as alleged herein.

76. As described herein, Officer Defendants directly and proximately caused Washington-Riley to be subjected to judicial proceedings for which there was no probable cause. The photo array omitted the only suspect properly identified by name and birthdate, Alexander Clevon Riley. Instead, Sergeant Johnson included another "Alexander Riley" in the photo array and Drumgoole selected that "Alexander Riley," the Plaintiff, from photo array. These facts demonstrate that Drumgoole was assisted or directed by Sergeant Johnson to select Washington-Riley from the photo array as the only "Alexander Riley" in the group. The photo array was not only incomplete because it omitted the sole suspect, it was suggestive and tainted by misconduct.

77. Rather than revealing their malfeasance and egregious misconduct leading to the wrongful prosecution and conviction of Washington-Riley, Officer Defendants suppressed material evidence concerning Alexander Clevon Riley, pinned his Mississippi driver's license on Washington-Riley through Sergeant Johnson's testimony at trial that the birthdate on the driver's license was unreliable, and falsely claimed with super-human memory at trial that Drumgoole and

16

Lee recognized Washington-Riley as the dealer. Their interactions with the dealer occurred three years earlier and lasted only minutes.

78. At all times relevant to this Complaint, the State relied materially and solely on the testimony and evidence presented by Officer Defendants in deciding to prosecute and to continue to prosecute Washington-Riley throughout his trial and post-conviction proceedings.

79. After his conviction and an investigation by the Conviction Integrity Unit of the Cook County State's Attorney's Office, Washington-Riley's conviction was vacated upon the State's motion and the criminal case was closed in his favor.

80. Officer Defendants acted with malice, willfulness, wantonness, and reckless indifference with respect to Washington-Riley's rights.

81. At all times relevant to this Complaint, Officer Defendants were acting in the course of their employment by the City of Chicago. Consequently, the City of Chicago is liable under the doctrine of *respondeat superior* for the misconduct of Officer Defendants and for the damages Washington-Riley incurred, and will incur in the future, as a result of Officer Defendants' malicious prosecution.

82. As a direct and proximate result of Officer Defendants' misconduct, Washington-Riley was wrongfully prosecuted, convicted, and sentenced and sustained damages therefrom, including attorneys' fees and expenses incurred in the defense of the prosecution, lost business opportunities, severe emotional distress, and mental anguish.

### Count V: State Law Claim Against the City of Chicago
### 745 ILCS 10/9-102 for Payment of Judgment and Indemnification

83. Washington-Riley hereby incorporates paragraphs 1–82 as alleged herein.

84. At all times relevant to this Complaint, the City of Chicago was the employer of Officer Defendants.

17

85. At all times relevant to this Complaint, Officer Defendants acted under the color of state law and in the scope of their employment as employees of the City of Chicago, and, specifically, as police officers in the Chicago Police Department.

86. Section 9-102 of the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102, provides in relevant part, as follows:

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article…

87. Pursuant to Section 9-102, the City of Chicago is liable for and required to pay any judgment entered against Officer Defendants on Counts I–IV hereof for compensatory damages, attorneys' fees, costs, and interest, and, therefore, Washington-Riley seeks judgment against the City of Chicago accordingly.

## JURY DEMAND

88. Plaintiff Washington-Riley demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

WHEREFORE, Plaintiff Alexander J. Washington-Riley prays for entry of judgment on Counts I–IV against Defendants Kevin Drumgoole, Durand Lee, and Dwayne Johnson in an amount to be proven at trial for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and interest, and on Counts IV and V against the City of Chicago in an amount to be proven at trial for compensatory damages, reasonable attorneys' fees, costs, and interest, and for such other and further relief as the Court may deem appropriate.

Dated: December 30, 2019

Respectfully submitted,

/s/ Samuel B. Isaacson
One of the Attorneys for Plaintiff

Samuel B. Isaacson (ARDC No. 6184323)
Katherine E. Boyles (Mass. Bar No. 703242)
J. Whitney M. Morley (ARDC No. 6333105)
LATHAM & WATKINS, LLP
330 North Wabash Avenue Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
samuel.isaacson@lw.com
katherine.boyles@lw.com
whit.morley@lw.com

*Attorneys for Plaintiff*